Filed 8/30/22 Preservation Action Council etc. v. City of San Jose etc. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PRESERVATION ACTION COUNCIL OF SAN JOSE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF SAN JOSE AND CITY COUNCIL OF CITY OF SAN JOSE, <br><br> Defendants and Respondents; <br><br> ALMADEN CORNER, LLC, <br><br> Real Party in Interest and Respondent. | H048953 <br> (Santa Clara County <br> Super. Ct. No. 20CV363696) |

## I. INTRODUCTION

This CEQA[1] action arises from the proposal of real party in interest Almaden Corner, LLC (Almaden Corner) to build a 19-story hotel in downtown San Jose directly adjacent to the historic DeAnza Hotel. After preparing an initial study and a final supplemental environmental impact report (SEIR) pursuant to CEQA concerning the proposed hotel project and holding a hearing, the City of San Jose's City Council (hereafter, collectively City) approved the project.

_____

[1] California Environmental Quality Act (Cal. Pub. Res. Code, § 21000, et. seq.)

Preservation Action Council of San Jose (PAC-SJ), a nonprofit California corporation concerned with "the promotion of protection and adaptive reuse of the city's historic resources" challenged City's approval of the Almaden Corner hotel project by filing a petition for writ of mandamus alleging violations of CEQA's requirements for environmental review. The trial court denied the petition for writ of mandamus and on December 3, 2020, judgment was entered in favor of respondents.

In its appeal, PAC-SJ contends that the trial court erred because (1) City violated CEQA by certifying the final SEIR although the final SEIR did not analyze the potentially significant visual and aesthetic impacts of the proposed hotel project; (2) the responses to certain comments in the final SEIR were inadequate; and (3) the hotel project objectives would allow a reduced-size project alternative.

For the reasons stated below, we find no merit in these contentions and we will affirm the judgment.

## II. Factual and Procedural Background

The project applicant, Almaden Corner, intends to develop a 19-story hotel with 272 rooms on the corner of Almaden Boulevard and West Santa Clara Street in downtown San Jose. The proposed project is known as the Almaden Corner Hotel project. As proposed, the hotel would also include a lobby, restaurants, and bars on the ground floor, as well as a bar and open-air patio on the nineteenth floor. The project site is currently used as a parking lot and is directly adjacent to the DeAnza Hotel, which is listed in the National Register of Historic Places. The parking proposed for the hotel project will be off-site in a City garage with valet service.

The environmental review process for the proposed Almaden Corner Hotel project included an initial study,[2] in which City analyzed the site-specific environmental impacts of

---

[2] "[A]n initial study is the preliminary environmental analysis (see Guidelines, § 15365) and its purposes include '[p]rovid[ing] the lead agency with information to use as the basis for deciding whether to prepare an EIR or negative declaration, . . ." (*Lighthouse*

2

the project that were not previously disclosed in a prior program level EIR, the Downtown Strategy 2040 final environmental impact report (FEIR). City concluded in the initial study that a supplemental EIR (SEIR) was required to provide subsequent project level environmental review for the hotel project. The draft SEIR for the hotel project was tiered from the Downtown Strategy 2040 FEIR and circulated in 2019.[3] The initial study is attached as Appendix A to the draft SEIR.

The many environmental impacts addressed in the draft SEIR and the initial study included the hotel project's impact on a historical resource, the DeAnza Hotel. The draft SEIR described the architectural context of the DeAnza Hotel as follows: "Prominently built at the end of a street that has evolved over time into a wide boulevard with a landscaped median, the De Anza Hotel presents a generally symmetrical heavily vertical massing along West Santa Clara Street. The hotel was designed by the regionally significant William H. Weeks, a prominent institutional designer, and was constructed in 1931. The NRHP [National Register of Historic Places] nomination identified the hotel as significant based on its architectural style, for its elaborate Spanish Colonial Revival interior design motifs, and for its historical association to the City since its construction was funded by the local business community."

---

*Field Beach Rescue v. City of Santa Cruz* (2005) 131 Cal.App.4th 1170, 1180; Guidelines, § 15063.) "The regulations that guide the application of CEQA are set forth in title 14 of the California Code of Regulations and are often referred to as the CEQA Guidelines. [Citation.]" (*Pfeiffer v. City of Sunnyvale City Council* (2011) 200 Cal.App.4th 1552, 1561, fn. 5; hereafter CEQA Guidelines or Guidelines.)

[3] " ' "Tiering" refers to using the analysis of general matters contained in a broader EIR (such as one prepared for a general plan or policy statement) with later EIRs and negative declarations on narrower projects; incorporating by reference the general discussions from the broader EIR; and concentrating the later EIR or negative declaration solely on the issues specific to the later project.' " (*Friends of College of San Mateo Gardens v. San Mateo County Community College Dist*. (2016) 1 Cal.5th 937, 959, brackets omitted.)

The draft SEIR determined, based on an analysis of the proposed hotel building design by its historical architecture consultant, Archives & Architecture, that "[t]he proposed project design would be compatible with the De Anza Hotel . . . and, while the setting would be altered, the historic setting of the De Anza Hotel is negligible with regard to the hotel's significance over time. Furthermore, the feeling and association of the De Anza Hotel would remain intact and the proposed project would not alter the character-defining features of the building. As a result, the project would have a less than significant indirect impact to historic resources." The draft SEIR also concluded that "[a]ll significant impacts of the proposed project would be reduced to a less than significant level with the implementation of mitigation measures identified in this SEIR."

The final SEIR for the Almaden Corner Hotel project, dated December 2019, was comprised of the draft SEIR, the first amendment to the draft SEIR, responses to comments on the draft SEIR, and various appendices. After holding a public hearing, the City Council voted to certify the SEIR and approved the project in Resolution No. 79373.

**A.** *Writ Proceedings*

### 1. Petition for Writ of Mandamus

PAC-SJ and the owner of the DeAnza Hotel, ML San Jose Holding, LLC, filed a verified petition for writ of mandamus setting aside City's approval of the Almaden Corner Hotel project. The petition named City and City Council as respondents, and Almaden Corner as real party in interest (hereafter, collectively City).

Petitioners raised several claims of CEQA violations, including the SEIR's inadequate responses to comments and failure to properly analyze environmental impacts, mitigation measures, and alternatives. In their opening brief, petitioners argued that (1) City's responses to several comments did not satisfy CEQA's requirements because the responses were conclusory; (2) the project objectives allowed a reduced-size alternative; and (3) the SEIR improperly determined that aesthetics impact of the hotel project on the historic DeAnza Hotel was not significant.

4

## 2. The Trial Court's Order

The trial court rejected all of petitioners' claims of CEQA violations and denied the petition for writ of mandamus in the November 24, 2020 order. Specifically, the trial court ruled that petitioners' claim that City's responses to comments were inadequate was barred, since petitioners had failed to exhaust their administrative remedy by informing City that the responses were inadequate before City certified the final SEIR and approved the hotel project. The trial court also determined that petitioners had failed to meet their burden to show that the SEIR did not adequately discuss either the project's impacts to the Hotel DeAnza or the reduced height alternative project. The judgment denying the petition for writ of mandamus was entered on December 3, 2020.

## III. DISCUSSION

PAC-SJ raises three CEQA issues on appeal: (1) City violated CEQA by certifying the final SEIR although the final SEIR did not analyze the potentially significant visual and aesthetic impacts of the proposed hotel project; (2) the responses to certain comments in the final SEIR were inadequate; and (3) the hotel project objectives would allow a reduced-size project alternative.[4]

We will begin our evaluation with an overview of the principles that guide our review of the CEQA issues.

### A. *Overview of CEQA Principles*

The California Supreme Court has provided an overview of CEQA principles: " 'The foremost principle under CEQA is that the Legislature intended the act "to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." ' [Citations.] 'With narrow

---

[4] PAC-SJ's opening brief also includes a brief paragraph with the heading "Approval Findings are Unsupported," followed by conclusory assertions that we need not address. "We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

exceptions, CEQA requires an EIR whenever a public agency proposes to approve or to carry out a project that may have a significant effect on the environment. [Citations.]' [Citation; see Guidelines, § 15002, subd. (f).) The basic purpose of an EIR is to 'provide public agencies and the public in general with detailed information about the effect [that] a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project.' (Pub. Resources Code, § 21061; see Guidelines, § 15003, subds. (b)-(e).) 'Because the EIR must be certified or rejected by public officials, it is a document of accountability. If CEQA is scrupulously followed, the public will know the basis on which its responsible officials either approve or reject environmentally significant action, and the public, being duly informed, can respond accordingly to action with which it disagrees.' [Citation.] The EIR "protects not only the environment but also informed self-government.' [Citation.]" (*Sierra Club v. City of Fresno* (2018) 6 Cal.5th 502, 511-512, fn. omitted (*Sierra Club*).)

Thus, "[a]s this court has observed, 'the overriding purpose of CEQA is to ensure that agencies regulating activities that may affect the quality of the environment give primary consideration to preventing environmental damage. [Citation.]' [Citation.]" (*Save Our Carmel River v. Monterey Peninsula Water Management Dist.* (2006) 141 Cal.App.4th 677, 687.)

**B.** *Standard of Review*

"In a CEQA case, the appellate court's review 'is the same as the trial court's: [It] reviews the agency's action, not the trial court's decision; in that sense appellate judicial review under CEQA is de novo.' [Citation.]" (*Protecting Our Water and Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 495 (*Protecting Our Water*).)

Accordingly, "[t]he reviewing court independently determines whether the record 'demonstrates any legal error' by the agency and deferentially considers whether the record 'contains substantial evidence to support [the agency's] factual determinations.' [Citation.]" (*Protecting Our Water*, *supra*, 10 Cal.5th at p. 495.) " 'Substantial evidence challenges are

6

resolved much as substantial evidence claims in any other setting: a reviewing court will resolve reasonable doubts in favor of the administrative decision, and will not set aside an agency's determination on the ground that the opposite conclusion would have been equally or more reasonable. [Citations.]' " (*Sierra Club*, *supra*, 6 Cal.5th at p. 515.) "If the agency's determination 'involves pure questions of law, we review those questions de novo.' [Citation.]" (*Protecting Our Water*, at p. 495.)

" 'Where an EIR is challenged as being legally inadequate, a court presumes a public agency's decision to certify the EIR is correct, thereby imposing on a party challenging it the burden of establishing otherwise.' [Citation.]" (*California Native Plant Society v. City of Santa Cruz* (2009) 177 Cal.App.4th 957, 987 (*Native Plant Society II*).)

**C.** *Aesthetics*

PAC-SJ contends that City violated CEQA by certifying the SEIR although the SEIR "failed to analyze the potentially significant aesthetic/visual impacts of the proposed new hotel." We also understand PAC-SJ to contend that the aesthetics discussion in the initial study attached as Exhibit A to the SEIR is insufficient to satisfy CEQA.[5] We begin our evaluation of PAC-SJ's contentions with an overview of CEQA's requirements for the analysis of aesthetics impacts.

**1. Aesthetic Impact under CEQA**

Public Resources Code section 21001, subdivision (b) provides in part that "[t]he Legislature further finds and declares that it is the policy of the state to: [¶] . . . [¶] Take all action necessary to provide the people of this state with . . . enjoyment of *aesthetic*, natural, scenic, and historic environmental qualities[.]" (Italics added.) Accordingly, it has been

---

[5] PAC-SJ's opening brief includes a heading that appears to indicate that PAC-SJ is also contending that the SEIR is inadequate due to failure to discuss the hotel project's inconsistency with "city plans." We need not address this issue since it was not discussed in the opening brief. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' [Citations.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

recognized that "aesthetic issues are properly studied under CEQA . . . ." (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 577; see also *Protect Niles v. City of Fremont* (2018) 25 Cal.App.5th 1129, 1141 (*Protect Niles*) [CEQA defines " ' "environment" ' to include 'objects of historic or aesthetic significance' "].)

Appendix G to the CEQA Guidelines provides an aesthetics checklist that recommends the lead agency consider whether the proposed project would (1) "Have a substantial adverse effect on a scenic vista?"; (2) "Substantially damage scenic resources, including, but not limited to, trees, rock outcroppings, and historic buildings within a state scenic highway?; (3) "Substantially degrade the existing visual character or quality of public views of the site and its surroundings?  If the project is in an urbanized area, would the project conflict with applicable zoning and other regulations governing scenic quality?"; and (4) "Create a new source of substantial light or glare which would adversely affect day or nighttime views in the area?"  (Guidelines, § 15000 et seq.; *Ocean View Estates Homeowners Assn., Inc. v. Montecito Water Dist.* (2004) 116 Cal.App.4th 396, 401.)

"However, a lead agency has the discretion to determine whether to classify an impact described in an EIR as 'significant,' depending on the nature of the area affected. (Guidelines, § 15064, subd. (b); [citations.]".)  (*Eureka Citizens for Responsible Government v. City of Eureka* (2007) 147 Cal. App.4th 357, 375 (*Eureka Citizens*).) " 'Where the agency determines that a project impact is insignificant, an EIR need only contain a brief statement addressing the reasons for that conclusion.  (CEQA Guidelines, § 15128.)' [Citation.]".)  (*Id.* at p. 376; see also § 21100, subd. (c) [EIR "shall also contain a statement briefly indicating the reasons for determining that various effects on the environment of a project are not significant and consequently have not been discussed in detail in the environmental impact report."].)  "[A] bare conclusion" that an impact is less than significant does not constitute an adequate statement of reasons.  (*Protect the Historic Amador Waterways v. Amador Water Agency* (2004) 116 Cal.App.4th 1099, 1111 (*Amador Waterways*).)

8

## 2. Standard of Review

The standard of review that applies to an EIR's conclusions regarding the environmental impact of a project is substantial evidence. (*Banning Ranch Conservancy v. City of Newport Beach* (2012) 211 Cal.App.4th 1209, 1230.) In the CEQA context, " '[s]ubstantial evidence is defined as 'enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached.' [Citation.] 'In reviewing for substantial evidence, the reviewing court "may not set aside an agency's approval of an EIR on the ground that an opposite conclusion would have been equally or more reasonable," for, on factual questions, our task "is not to weigh conflicting evidence and determine who has the better argument." ' [Citation.]" (*Ibid.*)

The party challenging the agency's findings in the EIR must affirmatively show that there is no substantial evidence in the record to support the agency's findings. (*California Native Plant Society v. City of Rancho Cordova* (2009) 172 Cal.App.4th 603, 626 (*Native Plant Society*).) This requires setting forth all of the evidence material to the agency's finding, then showing that the evidence could not reasonably support the finding. (*Ibid.*)

## 3. Analysis

PAC-SJ contends that City violated CEQA because the SEIR did not analyze the aesthetic and visual impact of the hotel project. According to PAC-SJ, the finding of no significant aesthetics impact in the initial study attached as Exhibit A to the SEIR is insufficient because it is conclusory. Analysis in the SEIR is required, PAC-SJ argues, because a fair argument could be made, on the basis of public comments regarding the negative impact of the hotel project on the visual character of the historic Hotel DeAnza, that the aesthetic and visual impact of the hotel project is potentially significant.

City responds that CEQA excludes consideration of aesthetics impacts from infill projects, such as the hotel project, pursuant to section 21099, subdivision (d)(1), which provides: "(d)(1) Aesthetic and parking impacts of a residential, mixed-use residential, or

9

employment center project on an infill site within a transit priority area shall not be considered significant impacts on the environment." Although section 21099, subdivision (d)(2)(B) further provides that "[f]or the purposes of this subdivision, aesthetic impacts do not include impacts on historical or cultural resources," City argues that this provision does not apply here because PAC-SJ has not argued an aesthetics impact on the DeAnza as an historical resource.

Alternatively, City argues that the initial study's finding of no significant aesthetics impact is supported by substantial evidence, including a review of the Appendix G aesthetic checklist items. City also points to the SEIR's discussion of the hotel project's impacts on the DeAnza hotel as a historic resource, which was based on two reports by City's consultant that concluded the hotel project was compatible with City's historic design guidelines for the downtown area.

We need not determine whether the provision of 21099, subdivision (d)(1) exempting proposed infill projects from consideration of aesthetic impacts applies in this case. The initial study for the proposed hotel project included City's conclusion that the aesthetic impact of the hotel project on the visual character of the city was less than significant for several reasons. Guided by the Appendix G aesthetics checklist, the initial study determined that (1) the project site was not located on a state scenic highway; (2) the project "would contribute to the visual presence of the Downtown area, but would not substantially block scenic views or modify existing scenic resources"; and (3) the proposed hotel tower would be similar in scale and appearance to other modern structures in the site vicinity.

Regarding the aesthetics impact on the Hotel DeAnza, the initial study stated: "A historic analysis completed for the project determined that the massing and aesthetics of the proposed tower would not adversely change the historic integrity or significance of the adjacent DeAnza Hotel (refer to Section 3.1 Cultural Resources of the SEIR). Construction of the proposed hotel would, however, block views of the rooftop Hotel De Anza sign for persons traveling by car eastbound on Santa Clara Street. Views of the [Hotel DeAnza roof]

10

sign are currently blocked to persons traveling by car in the westbound direction due to existing buildings and partially to completed [*sic*] blocked in the eastbound direction at various points due to the palm trees along the roadway (between SR 87 and the project site) and State Route (SR) 87, which is elevated near the site. Pedestrian views vary but are most prominent from the south side of Santa Clara Street. While the project would further limit viewpoints of the roof sign for all eastbound automobile traffic and some eastbound pedestrian traffic, it would not substantially change the visual character of the area."

In determining whether the initial study's finding that aesthetics impact of the hotel project was less than significant complies with CEQA, the decision in *Eureka Citizens, supra*, 147 Cal.App.4th 357 is instructive. In that case, the initial study applied the Appendix G aesthetics checklist and determined that the proposed project, a school playground, would not have an adverse aesthetics impact. (*Id.* at p. 376.) The *Eureka Citizens* court concluded that "the City [of Eureka] determined that the Project's aesthetic impacts would be insignificant, and EIR contained, as required, statements addressing the reasons for that conclusion. (Guidelines, § 15128.) The EIR therefore adequately dealt with this issue." (*Ibid*.)

We reach a similar result in the present case. As noted above, the initial study stated several reasons for City's conclusion that the hotel project's aesthetics impact would be less than significant, including a discussion of whether the hotel project would have any impact on the visual character of the DeAnza Hotel and surrounding area. The statement of reasons was more than "a bare conclusion," and consequently a more detailed discussion was not required under CEQA. (See *Amador Waterways, supra*, 116 Cal.App.4th at p. 1111; CEQA Guidelines, § 15128; § 21100, subd. (c).)

To the extent that PAC-SJ argues that a statement of reasons in an initial study do not suffice under CEQA, we disagree. An initial study that includes statements addressing the agency's reasons for finding an environmental impact to be less than significant may be

11

incorporated in the EIR, which need not discuss the impact further. (*Ocean Street Extension Neighborhood Assn. v. City of Santa Cruz* (2022) 73 Cal.App.5th 985, 1005 (*Ocean Street*).)

Moreover, PAC-SJ has not met its burden to show that City's findings in the initial study were not supported by substantial evidence, since PAC-SJ made no attempt to set forth all of the evidence material to City's finding of a less than significant aesthetics impact or show that the evidence could not reasonably support the findings. (See *Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.) We observe that City's statements in the initial study addressing the visual and aesthetics impact on the DeAnza Hotel were supported by two reports from Archives & Architecture, including a September 2018 review and a May 2019 supplemental review. The reports were authored by Leslie A.G. Dill, a historical architect and architectural historian, in collaboration with Franklin Maggi, a historical architect and preservation planner. Both reports were attached as Exhibit C to the SEIR. We therefore determine that the discussion of the visual and aesthetics impact of the hotel project on the Hotel DeAnza and surrounding area was adequate as an informational document under CEQA. (See *Ocean Street*, *supra*, 73 Cal.App.5th at p. 1005.)

PAC-SJ relies on the decisions in *Protect Niles*, *supra*, 25 Cal.App.5th 1129, and *Georgetown Preservation Society v. County of El Dorado* (2018) 30 Cal.App.5th 358 (*Georgetown*) for a contrary conclusion. We understand PAC-SJ to argue that the decisions in *Protect Niles* and *Georgetown* support its contention that a fair argument can be made, based on public comments, that the visual and aesthetic impacts of the hotel project are potentially significant and therefore a revised EIR analyzing these potential impacts is required. PAC-SJ's reliance is misplaced, since both decisions applied the fair argument standard in the context of a mitigated negative declaration where no EIR had been prepared.

In *Protect Niles*, the City of Fremont approved a townhome development after determining that the project would have no significant environmental impacts and adopting a mitigated negative declaration in lieu of an EIR. (*Protect Niles*, *supra,* 25 Cal.App.5th at p. 1137.) The appellate court applied the fair argument standard to determine whether an

12

EIR is required: " 'If there is substantial evidence in the whole record supporting a fair argument that a project may have a significant nonmitigable effect on the environment, the lead agency shall prepare an EIR, even though it may also be presented with other substantial evidence that the project will not have a significant effect. ([§ 21151, subd. (a); [CEQA Guidelines], § 15064, subd. (f)(1), (2); [citations].)" (*Protect Niles*, at p. 1139.) Under this standard, the appellate court concluded that fact-based public comments had provided substantial evidence supporting "a fair argument that the Project would have significant adverse aesthetic and traffic impacts," and therefore preparation of an EIR was required. (*Id.* at p. 1153.) The appellate court in *Georgetown* similarly concluded that "lay opinions can provide substantial evidence to support a fair argument that a project may have a significant aesthetic impact on the environment, triggering the need to prepare an environmental impact report (EIR) pursuant to [CEQA]." (*Georgetown*, *supra*, 30 Cal.App.5th at p. 363.)

The fair argument standard applied in *Protect Niles*, *supra*, 25 Cal.App.5th 1129 and *Georgetown*, *supra*, 30 Cal.App.5th 358 is not applicable in the present case, where an EIR has been prepared for the hotel project. As the court noted in *Protect Niles*, where an EIR has been prepared, the issue is "whether the city's finding of no significant environmental impact after mitigation was supported by substantial evidence, regardless of any substantial evidence to the contrary; here, where the city relied on [a mitigated negative declaration], the question before us is whether there was *any* substantial evidence in the record of a significant environmental impact, regardless of substantial evidence supporting the city's finding of no significant impact. '[T]his distinction is crucial for purposes of our review.' [Citation.]" (*Protect Niles*, at p. 1144.)

For these reasons, we find no merit in PAC-SJ' contention that City violated CEQA because the SEIR failed to analyze the potential visual and aesthetic impacts of the proposed hotel project.

13

**D.** *Response to Comments*

PAC-SJ contends that City's responses to several comments in the final SEIR were inadequate under CEQA. City responds that the trial court properly determined that PAC-SJ's claims of inadequate responses to comments are barred by PAC-SJ's failure to exhaust its administrative remedies by objecting to the inadequate responses during the January 14, 2020 public hearing on the final SEIR. We will begin our evaluation with an overview of CEQA's requirements for the exhaustion of administrative remedies.

### 1. Exhaustion of Administrative Remedies

As this court has noted, " ' "[e]xhaustion of administrative remedies is a jurisdictional prerequisite to maintenance of a CEQA action." [Citation.]' " (*Friends, Artists & Neighbors of Elkhorn Slough v. California Coastal Com.* (2021) 72 Cal.App.5th 666, 708 (*Elkhorn Slough*).) The requirement is set forth in section 21177, which provides: "An action or proceeding shall not be brought pursuant to Section 21167 [commencement of actions] unless the alleged grounds for noncompliance with this division [§ 21000 et seq.] were presented to the public agency orally or in writing by any person during the public comment period provided by this division or before the close of the public hearing on the project before the issuance of the notice of determination." (§ 21177, subd. (a).)

City contends that if PAC-SJ had objected to the adequacy of City's responses to comments during the administrative proceedings, City "could have remedied any perceived deficiencies at the time, before PAC-SJ commenced this litigation." However, City points to no authority explicitly creating the requirement it would impose on PAC-SJ to exhaust its administrative remedies with regard to the adequacy of City's responses to comments, and we decline to do so here. (See section 21083.1 [constraining the imposition of procedural or substantive requirements beyond those explicitly stated in CEQA].) We will therefore consider the merits of PAC-SJ's contentions as to the adequacy of the City's responses to comments on the Draft SEIR.

14

## 2. Requirements for Response to Comments

We begin our evaluation of PAC-SJ's claims with an overview of CEQA's requirements for an agency's responses to comments. CEQA requires a public review period of at least 30 days for a draft EIR. (§ 21091, subd. (a).) CEQA further requires that " '[t]he lead agency shall consider comments it receives on a draft [EIR] if those comments are received within the public review period.' (§ 21091, subd. (d)(1).) '[T]he lead agency shall evaluate comments on environmental issues . . . and shall prepare a written response.' (§ 21091, subd. (d)(2)(A).) The agency's written response must describe the disposition of each significant environmental issue raised in the comments. (§ 21091, subd. (d)(2)(B).)" (*King & Gardiner Farms, LLC v. County of Kern* (2020) 45 Cal.App.5th 814, 879.)

Regarding the adequacy of responses to comments, this court has stated that "[r]esponses to comments need not be exhaustive; they need only demonstrate a 'good faith, reasoned analysis.' (Guidelines, § 15088, subd. (c);[6] [Citation.] ' " '[T]he determination of the sufficiency of the agency's responses to comments on the draft EIR turns upon the detail required in the responses. [Citation.] Where a general comment is made, a general response is sufficient.' " ' [Citation]. Satisfactory responses to comments ' " 'may be provided by reference to the EIR itself.' [Citation.]" (*Gilroy Citizens for Responsible Planning v. City of Gilroy* (2006) 140 Cal.App.4th 911, 937 (*Gilroy Citizens*).) "Agencies generally have

---

[6] Section 15088, subdivision (c) provides: "The written response shall describe the disposition of significant environmental issues raised (e.g., revisions to the proposed project to mitigate anticipated impacts or objections). In particular, the major environmental issues raised when the lead agency's position is at variance with recommendations and objections raised in the comments must be addressed in detail giving reasons why specific comments and suggestions were not accepted. There must be good faith, reasoned analysis in response. Conclusory statements unsupported by factual information will not suffice. The level of detail contained in the response, however, may correspond to the level of detail provided in the comment (i.e., responses to general comments may be general). A general response may be appropriate when a comment does not contain or specifically refer to readily available information, or does not explain the relevance of evidence submitted with the comment."

considerable leeway regarding such response." (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 487, fn. 9 (*EPIC*).)

In the present case, PAC-SJ contends that City's responses to several comments were inadequate under CEQA, including responses to comments regarding the proposed valet parking, City's design guidelines, and the impact on the DeAnza Hotel. We will address each category of comment in turn.

### *Comments on Valet Parking*

In comment B.2, the Valley Transportation Authority (VTA) stated its concerns that the proposed valet parking on Santa Clara Street would be unsafe and was inconsistent with the concept of public service lanes. City's response to comment B.2 referred to a local transportation analysis (LTA) attached to the initial study that concluded the proposed valet parking was adequate for operational purposes, stated that VTA's opposition to the valet parking was acknowledged, and noted that the comment did not result in significant environmental impacts or mitigation measures not previously analyzed in the draft SEIR or its appendices.

In comment F.2, a member of the public stated that five valet parking places was insufficient to manage hotel parking and would result in traffic and safety problems, noting also that the plan for the presence of dumpsters for waste removal would impact traffic safety. City responded that an analysis of the five valet parking spaces was included in the LTA and found to be adequate for hotel operations, and that "[r]egarding the garage service comments, a condition to restrict truck access to the loading spaces during garbage pick-up days to provide space for waste bins at the loading dock entrance will be part of the project."

PAC-SJ argues that City's responses to comment B.2 and F.2 are inadequate because the responses are conclusory and did not respond to the questions raised in the comments or provide an analysis. City maintains that its responses to comments B.2 and F.2 were sufficient because the comment referred to the LTA that analyzed the operational and safety

impacts of the valet parking proposal, and because a general response to a general comment is sufficient. We agree. A response to a comment is adequate where the response refers to a more extensive discussion in the EIR; here, City's responses to comments referenced the LTA's analysis of the valet parking proposal that is attached to the initial study and included draft SEIR. No further response was required under CEQA. (See *City of Irvine v. County of Orange* (2015) 238 Cal.App.4th 526, 550 [response may refer to parts of the draft EIR that analyzes the environmental impacts raised by the comment]; *Eureka Citizens*, *supra*, 147 Cal.App.4th at p. 378 [same].)

### *Comments on Design Guidelines*

In comment H.6, the commenter stated that an urban design review by Skidmore, Owings, and Merrill included significant design revisions to the hotel project that were not addressed. City responded that "[a]n analysis of the project design was completed by a qualified historic consultant in consultation with City staff and the City concluded that the proposed design of the building is consistent with the City's applicable design guidelines and does not result in a substantial adverse change to the integrity of the De Anza Hotel. Refer to Response H.20 for more additional responses to materials." Response H.20 is a detailed response to another comment regarding the Skidmore, Owings, and Merrill urban design review that states, among other things, that "[a]fter review of the [Skidmore, Owings, and Merrill] conclusions and the historic assessment, City staff worked with the applicant over several months to revise the design of the building to be more consistent with the City's Historic Design Guidelines."

PAC-SJ argues that City's response to comment H.6 is inadequate because it does not address specific suggestions to reduce impacts to the DeAnza Hotel and merely references City's consultant without discussion. This argument is not convincing, since the California Supreme Court has instructed that "[w]hen an agency adequately addresses an environmental issue in response to one commenter, it may refer to the prior response when addressing other commenters, and a failure to respond to a particular comment is not

prejudicial error when the issue raised by the comment is adequately addressed elsewhere. [Citation.]" (*EPIC*, *supra*, 44 Cal.4th at p. 487, fn. 9.) Here, City's detailed response to comment H.20, which PAC-SJ contends is also inadequate for the same reasons, adequately addressed commenters' concerns regarding City's utilization of the Skidmore, Owings, and Merrill urban design review in revising the design of the hotel project to be more consistent with City's historic design guidelines.

Comment I.25 similarly asserts that the project applicant did not address the revisions to the hotel project that were suggested in the Skidmore, Owings and Merrill urban design review. Comment 1.25 concludes, "[C]ity must be sure that the project conforms to its own design requirements and incorporates the design recommendations from the peer review. In addition, they must apply their own regulations consistently especially for impacts to precious and diminishing cultural resources." City's response to comment 1.25 states: "Refer to Response H.20." Again, City's response is adequate, because referring to City's detailed response to comment H.20 regarding the same design issue is appropriate under CEQA. (See *EPIC*, *supra*, 44 Cal.4th at p. 487, fn. 9.)

Comment H.23 states: "[t]he SEIR states (on page 30) that '[t]he detailing meets the intent, but not the letter, of the guidelines that a new building be "broken down" in scale to be compatible with nearby historic resources.' There is no substantiation as to the intent, and we do not agree that the detailing meets the intent. The [Skidmore, Owings and Merrill] sketch above shows what we believe is the intent when the guideline uses the term 'broken down.' " City's response acknowledges the commenter's opinion regarding City's historic guidelines, and notes that "[t]he professional judgement [*sic*] of a qualified historic consultant, as well as the City's professional staff, evaluat[ed] proposed project plans." City's response is adequate under CEQA, since " ' "[w]here a general comment is made, a general response is sufficient." ' [Citation]." (*Gilroy Citizens*, *supra*, 140 Cal.App.4th at p. 937.)

PAC-SJ also contends that City's responses to the comments L.1-L.9 by City's Historic Landmarks Commission, which PAC-SJ acknowledges "similarly address ways in which the project is inconsistent with the Downtown Historic Design Guidelines, Historic Preservation Ordinance, and fails to follow the *Secretary's Standards* to mitigate impacts to the De Anza" is inadequate. Our review of comments L.1-L.9 shows that the Historic Landmarks Commission's comments express disagreement with City that the proposed hotel project's height, massing, and materials comply with historic design guidelines. City responded to comment L.3 by stating in part that "[p]ursuant to the analysis in the Draft SEIR, the analysis conducted by the City's historic consultant was completed consistent with City standards and the findings were confirmed by City staff and the City's Historic Preservation Officer. While the commenter may have a different opinion than those disclosed in the Draft SEIR and request additional redesign to further comply with previous comments, the professional judgement of a qualified historic consultant evaluating proposed project plans is considered substantial evidence under CEQA (Guidelines Section 15384)." City references its response to comment L.3 in responding to several of the L.1-L.9 comments.

In responding to the Historic Landmark Commission's comments City also references its response to comment K.1 regarding application of the Secretary of the Interior Standard for Historic Rehabilitation. The detailed response to comment K.1 concludes that "the City's Historic Design Guidelines are modeled after the Secretary of the Interior Standards and the project was found to be consistent with the City's guidelines. Hence, in order to determine the impact of the proposed project to the De Anza Hotel, these guidelines were utilized to inform the analysis of the seven aspects of historic integrity, as indicated by the National Register and State of California's definition of authenticity of a resource. The historic assessment also determined that the historic integrity of the DeAnza Hotel would not be impacted by the project." We find City's responses to comments L.1-L.9 to be adequate under CEQA, since "[r]esponses to comments need not be exhaustive; they need

19

only demonstrate a 'good faith, reasoned analysis.'  (Guidelines, § 15088, subd. (c) . . . .)" (*Gilroy Citizens*, *supra*, 140 Cal.App.4th at p. 937.)

### *Comments Regarding Impact on DeAnza Hotel*

Comment H.22 generally states that the draft SEIR's conclusions are subjective and there should be more evidence and a "robust" discussion of how conclusions were reached. Noting that the commenter did not provide any evidence to refute the analysis in the SEIR, City's response to comment H.22 also states in part that "[t]he historic consultant and City planning staff had a variety of plans and renderings on file at the City by which to make their determination that the proposed structure is consistent with the City's historic design guidelines, including the proposed materials.  Furthermore, the analysis conducted by the City's historic consultant was completed consistent with City standards and the findings were confirmed by City staff and the City's Historic Preservation Officer."  We find City's response to comment H.22 to be adequate under CEQA, since "[w]hen responding to comments, lead agencies need only respond to significant environmental issues and do not need to provide all information requested by reviewers, as long as a good faith effort at full disclosure is made in the EIR." (CEQA Guidelines, § 15204, subd. (a).)  "A project opponent or reviewing court can always imagine some additional study or analysis that might provide helpful information.  It is not for them to design the EIR.  That further study . . . might be helpful does not make it necessary.' " (*Laurel Heights Improvement Assn. v. Regents of University of California* (1989) 47 Cal.3d 376, 415.)

In comment H.35, the commenter asserted that the proposed hotel project will block views of the DeAnza Hotel and its iconic neon sign, which would not occur if a six-story building was constructed.  City provided a detailed response to comment H.35 summarizing the aesthetics analysis in the initial study, noting that due to the public concern regarding the aesthetics of the hotel project, City "chose to include a full analysis of this resource area."

Comment H.36 similarly states that a six-story building would not obscure the Hotel DeAnza's iconic neon sign or shade the DeAnza Hotel.  In response to comment H.36, City

20

noted that reduced visibility of the DeAnza sign is not considered a significant impact and refers to City's response to comment H.14 regarding shading. The response to comment H.14 states in part: "[t]he western façade and northern end of the De Anza have no such features which could be impacted by shading from the project and, as such, new shadows were not identified as an impact to the historic integrity of the building. Full analysis of the De Anza Hotel is disclosed in Section 3.1 of the Draft SEIR." City's responses to comments H.35 and H.36 are adequate under CEQA since, as we have discussed, " '[r]esponses to comments need not be exhaustive; they need only demonstrate a 'good faith, reasoned analysis.' (Guidelines, § 15088, subd. (c) . . . .)" (*Gilroy Citizens*, *supra*, 140 Cal.App.4th at p. 937.)

Finally, PAC-SJ submitted comments K.1 and K.2 expressing concerns that the hotel project does not comply with the Secretary of the Interior Standards for Historic Rehabilitation and, in particular, the standard that a building adjacent to a historic building should not be much larger than the historic building. As we have discussed, City's detailed response to comment K.1 stated that "the City's Historic Design Guidelines are modeled after the Secretary of the Interior Standards and the project was found to be consistent with the City's guidelines." In response to comment K.2, City stated in part that "[f]or projects which do not directly modify, add to, or demolish any portion of a historic structure, the City's Historic Preservation Ordinance (City Code Chapter 13.48) does not require an analysis pursuant to the Secretary of the Interior Standards." Again, we find City's responses to comments K.1 and K.2 to be adequate under CEQA, since "[r]esponses to comments need not be exhaustive; they need only demonstrate a 'good faith, reasoned analysis.' (Guidelines, § 15088, subd. (c) . . . .)" (*Gilroy Citizens*, *supra*, 140 Cal.App.4th at p. 937.)

For these reasons, we find no merit in PAC-SJ's contentions that City's responses to certain comments were inadequate under CEQA.

21

**E.** *Alternatives Analysis*

PAC-SJ contends that the EIR's analysis of alternatives is inadequate because project objectives allow a reduced-size alternative, and lower profits do not render an alternative infeasible. We will begin our evaluation of PAC-SJ's contentions with an overview of CEQA's requirements for the alternatives analysis in an EIR.

The California Supreme Court has instructed that "[t]he EIR must set forth not only environmental impacts and mitigation measures to be reviewed and considered by state and local agencies, but also project alternatives [citations]—including a 'no project' alternative. ([Guidelines,] § 15126.6.)" (*Friends of the Eel River v. North Coast Railroad Authority* (2017) 3 Cal.5th 677, 713, italics omitted.)

Our Supreme Court has also stated the specific requirements for the alternatives analysis in an EIR: "The CEQA Guidelines state that an EIR must 'describe a range of reasonable alternatives to the project . . . which would feasibly attain most of the basic objectives of the project but would avoid or substantially lessen any of the significant effects of the project . . . .' ([Guidelines,] § 15126.6, subd. (a).) An EIR need not consider every conceivable alternative to a project or alternatives that are infeasible. [Citations.]" (*In re Bay-Delta etc.* (2008) 43 Cal.4th 1143, 1163 (*Bay-Delta*).)

Moreover, as stated in the Guidelines, " '[t]here is no ironclad rule governing the nature or scope of the alternatives to be discussed other than the rule of reason.' " (Guidelines, § 15126.6.) "The rule of reason 'requires the EIR to set forth only those alternatives necessary to permit a reasoned choice' and to 'examine in detail only the ones that the lead agency determines could feasibly attain most of the basic objectives of the project.' (*Id.*, § 15126.6, subd. (f).)" (*Bay-Delta, supra*, 43 Cal.4th at p. 1163.) "[W]hether to reject or approve any of the alternatives is a decision only for the decisionmakers. [Citation.] They may reject alternatives that are undesirable from a policy standpoint [citations] as well as alternatives that fail to meet project objectives [citation]." (*Ocean Street*, *supra*, 73 Cal.App.5th at p. 1016.)

In the present case, the SEIR identified six project alternatives, including (1) a location alternative; (2) a building materials alternative; (3) a site layout alternative; (4) a land use alternative-office building; (5) a no-project alternative; and (6) a reduced height and massing alternative. The SEIR concluded that the reduced height and massing alternative of seven to eight stories "would not allow for new high-density development to be constructed on the project site consistent with the General Plan but would result in a mid-rise structure that would not be the highest and best use of the site based on the General Plan land use designation. This alternative meets some of the objectives of the proposed project and is generally consistent with the General Plan policies."

PAC-SJ makes conclusory assertions that the SEIR's analysis of alternatives is inadequate because a reduced size alternative is feasible and would be allowed under the project objectives, and because reduced profits do not render an alternative infeasible. However, "conclusory assertions of error are ineffective in raising issues on appeal. [Citation.]" (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 523.) Moreover, we reiterate " '[w]here an EIR is challenged as being legally inadequate, a court presumes a public agency's decision to certify the EIR is correct, thereby imposing on a party challenging it the burden of establishing otherwise.' [Citation.]" (*Native Plant Society II, supra*, 177 Cal.App.4th at p. 987.) Here, PAC-SJ has not met that burden with regard to its contention that the SEIR's alternatives analysis is inadequate. PAC-SJ merely states conclusory assertions regarding a reduced-size alternative, without citations to the record. This deficiency is fatal to PAC-SJ's claims.

"An appellant must '[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears.' (Cal. Rules of Court, rule 8.204(a)(1)(C).) ' "The appellate court is not required to search the record on its own seeking error." [Citation.]' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156.) Where a party fails to support an argument with the necessary citations to the record, the argument will be deemed to be waived. (*Ibid.*) Here, PAC-SJ

23

has failed to include any citations to the record showing that City determined a reduced size alternative was infeasible due to lower profits. Our review of the record shows that the City Council did not choose the reduced height and massing alternative, although it was found to be feasible, because that alternative did not allow for high-density development on the project site consistent with City's general plan, and would not be the highest and best use of the site.

Accordingly, we determine that PAC-SJ's contention that the SEIR's alternatives analysis is inadequate under CEQA lacks merit.

## IV. DISPOSITION

The December 3, 2020 judgment is affirmed.

_____
Greenwood, P. J.

WE CONCUR:


_____
Grover, J.


_____
Lie, J.


Preservation Action Council of San Jose v. City of San Jose.
H048953